1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

4

5    XIUFANG SITU, et al.,

6                              Plaintiffs,                NO. C06-2841 TEH

7             v.                                          ORDER GRANTING IN PART AND
                                                          DENYING IN PART DEFENDANT'S
8    MICHAEL O. LEAVITT,                                  MOTION TO DISMISS

9                              Defendant.

10

11          This matter came before the Court on Monday, October 23, 2006, on Defendant's

12   motion to dismiss and Plaintiffs' motion for class certification.  After carefully considering

13   the parties' written and oral arguments, the record, and governing law, the Court now

14   GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss for the reasons

15   discussed below.[1]  In addition, the Court orders Plaintiffs to show cause as to why those

16   individual plaintiffs who appear to have passed away or with whom counsel have otherwise

17   lost contact should not be dismissed from this case.

18

19   **BACKGROUND**

20          Plaintiffs' class action complaint arises out of the Medicare Part D prescription drug

21   program created by Title I of the Medicare Prescription Drug, Improvement, and

22   Modernization Act of 2003 ("MMA").  Prior to this year, Medicare beneficiaries who were

23   also eligible for Medicaid received their prescription drug coverage from their states'

24   Medicaid agencies.  However, prescription drug coverage for these individuals, known as

25   "dual eligibles," ended under Medicaid on December 31, 2005.  As of January 1, 2006,

26   prescription coverage for dual eligibles was shifted from Medicaid to the Medicare Part D

27   program.

28          [1]Plaintiffs' motion for class certification will be addressed in a subsequent order.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    Thirteen individual plaintiffs seek to represent the following class: "All full benefit

2    dually eligible Medicare beneficiaries who are unable to receive the full benefits of Medicare

3    Part D prescription drug coverage and/or the Low Income Subsidy program due to the

4    actions or failure to act of the Secretary of Health and Human Services." Second Am.

5    Compl. ¶ 49 (hereinafter "SAC"). Plaintiffs also include four organizations that have

6    allegedly diverted resources to counsel their clients and members on changes in their

7    prescription drug coverage following enactment of the MMA: the California Alliance for

8    Retired Americans ("CARA"), the Action Alliance of Senior Citizens of Greater

9    Philadelphia ("Action Alliance"), the Illinois Network of Centers for Independent Living

10   ("INCIL"), and the Stony-Hayes Center for Independent Living ("Stony-Hayes Center").

11   Defendant Michael O. Leavitt, the Secretary of the United States Department of

12   Health and Human Services ("HHS"), is responsible for the conduct and policies of HHS,

13   including the Centers for Medicare and Medicaid Services ("CMS"), which administers the

14   Medicare program. Defendant is thus responsible for implementing the changes in

15   prescription drug coverage for dual eligibles under the MMA.

16   Plaintiffs challenge three aspects of the provision of Part D benefits to dual eligibles.

17   First, Plaintiffs allege that Defendant has failed to implement "uniformly and properly" the

18   requirement that dual eligibles be auto-enrolled into a private prescription drug plan if they

19   do not enroll in a plan of their own choice, and that therefore many dual eligibles have not

20   been enrolled in a Part D prescription drug plan. *Id.* ¶ 3. Second, Plaintiffs allege that

21   Defendant has failed to inform Part D plans on a timely basis of the identity of dual eligibles

22   automatically enrolled in their respective plans and of the beneficiaries' entitlement to the

23   Low-Income Subsidy, a program established by the MMA to waive the monthly Part D plan

24   premium and annual deductible and to reduce cost sharing by the beneficiary. *Id.* Finally,

25   Plaintiffs allege that Defendant has failed to process changes in plan enrollment "adequately

26   and uniformly" when dual eligibles decide to change prescription drug plans. *Id.*

27   On July 14, 2006, Defendant filed a motion to dismiss for lack of subject matter

28   jurisdiction. Plaintiffs filed an opposition to that motion on August 4, 2006, and Defendant

2

United States District Court

For the Northern District of California

1   filed his reply on August 11, 2006.  Upon review, the Court discovered that Plaintiffs'

2   opposition applied an incorrect standard of review for jurisdictional challenges, which, as

3   discussed below, allows consideration of evidence outside the complaint.  While the Court

4   could have granted parts of Defendant's motion because Plaintiffs' error resulted in their

5   failure to create a material factual dispute over certain jurisdictional issues, the Court instead

6   ordered the parties to file supplemental briefs "to allow full consideration of the merits of

7   Defendant's motion."  Aug. 17, 2006 Order Requiring Suppl. Briefs & Order Continuing

8   Mot. Hearings at 2.

9          The Court subsequently extended the deadlines for these supplemental briefs after

10   denying Defendant's motion for a discovery stay.  Plaintiffs' counsel insisted that the

11   requested discovery was not necessary to oppose Defendant's motion to dismiss, but "the

12   Court sua sponte continue[d] the supplemental briefing deadlines and the motion hearings on

13   Defendant's motion to dismiss and Plaintiffs' motion for class certification to allow the

14   parties and the Court to consider the evidence produced by Defendant in response to

15   Plaintiffs' pending discovery requests."  Aug. 30, 2006 Order Denying Def.'s Mot. for Stay

16   on Disc. & Order Continuing Sept. 25, 2006 Mot. Hearing & Suppl. Briefing Sched. at 5.

17   The parties timely filed their supplemental briefs, including supporting declarations, and

18   Defendant's motion to dismiss is now finally before this Court.

19

20   **LEGAL STANDARD**

21          Defendant raises four arguments in his motion to dismiss: (1) that twelve of thirteen

22   individual plaintiffs lack standing; (2) that all four organizational plaintiffs also lack

23   standing; (3) that four individual plaintiffs' claims are moot; and (4) that seven individual

24   plaintiffs have failed to satisfy the jurisdictional prerequisite of presenting their claims to the

25   agency.  Because all of these arguments raise jurisdictional concerns, Defendant brings his

26   motion under Federal Rule of Civil Procedure 12(b)(1), rather than Rule 12(b)(6) for failure

27   to state a claim.  In addition, Defendant raises factual rather than facial jurisdictional attacks

28   on Plaintiffs' claims.

United States District Court

For the Northern District of California

1    Where, as here, a defendant's factual jurisdictional challenges are intertwined with the

2    merits of the case, "the district court assumes the truth of allegations in [the] complaint

3    . . . unless controverted by undisputed facts in the record." *Roberts v. Corrothers*, 812 F.2d

4    1173, 1177 (9th Cir. 1987).  That is, "the district court should employ the standard applicable

5    to a motion for summary judgment and grant the motion to dismiss for lack of jurisdiction

6    only if the material jurisdictional facts are not in dispute and the moving party is entitled to

7    prevail as a matter of law." *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).[2]

8    Thus, to prevail on a motion to dismiss a plaintiff for lack of standing at this stage of the

9    proceedings, for example, a defendant bears the burden of demonstrating that, based on

10   undisputed facts, the plaintiff cannot establish standing.

11

12   **DISCUSSION**

13   **I.     Plaintiffs Beer, Emery, Perillo, Schwartzle, and Snider**

14   As an initial matter, it appears that five of the thirteen individual plaintiffs cannot or

15   may no longer want to participate in this case.  First, Barbara (Bobbi) Beer "has indicated

16   that she cannot participate in this lawsuit for personal health reasons," and Plaintiffs' counsel

17   stated their intention to submit a notice of withdrawal on her behalf.  Suppl. Opp'n at 2 n.1.

18   Plaintiffs need not file such a notice, however, because the Court now dismisses Plaintiff

19   Beer from this case without prejudice.

20   In addition, Plaintiffs' counsel have been unable to contact Plaintiffs Vincent Perillo

21   and Ludivina (or Ludmina) Schwartzle,[3] *id.*, and, at oral argument, Defendant's counsel

22   represented to the Court, without any rebuttal from Plaintiffs' counsel, that Plaintiffs Lillian

23   Emery and Mildred Snider have passed away.  It appears that these four individuals cannot or

24   _____

25   [2]By contrast, if the challenged jurisdictional facts are not intertwined with the merits,
     then "no presumption of truthfulness attaches to the plaintiff's allegations" and the court
26   "may hear evidence and make findings of fact necessary to rule on the subject matter
     jurisdiction question prior to trial."  *Rosales*, 824 F.2d at 803.

27   [3]The caption of this case includes *Ludmina* Schwartzle, but both Plaintiffs and
     Defendant discuss *Ludivina* Schwartzle in their papers.  *E.g.*, Mot. at 13; Opp'n at 9.
28   Plaintiffs also at times refer to *Ludmina* Schwartzle.  *E.g.*, Suppl. Opp'n at 2 n.1.

United States District Court

For the Northern District of California

do not wish to pursue their claims, and Plaintiffs shall therefore show cause as to why these four plaintiffs should not be dismissed by filing a written response on or before **January 16, 2007.** If Plaintiffs fail to file a timely response, Plaintiffs Perillo and Schwartzle will be dismissed without prejudice, and Plaintiffs Emery and Snider will be dismissed with prejudice.

Based on the above, it is unnecessary for the Court to discuss any arguments related solely to the above five plaintiffs at this time. Instead, this order addresses only those arguments that are applicable to the remaining eight individual plaintiffs and four organizational plaintiffs.

## II.   Admissibility of the Block Declarations

As another preliminary matter, Plaintiffs contend that the statements regarding individual plaintiffs in the declarations of Abby Block are not based on personal knowledge and therefore may not be considered by the Court. Block explicitly states in her declarations that some of the information contained therein is not based on her personal knowledge. For example, she explains in her first declaration that, "[t]he statements made in this Declaration are based on my personal knowledge, information contained in agency files, and information furnished to me by CMS staff and contractors." (First) Block Decl. ¶ 2 (hereinafter "Block Decl."). She further explains that, "CMS staff and contractors have researched the factual situations of each of the ten named plaintiffs in this lawsuit." *Id.* ¶ 50. Likewise, in her second declaration, Block explains that, "[t]he statements made in this declaration are based on information furnished to me by CMS staff and contractors." Second Block Decl. ¶ 2.

Defendant does not and cannot dispute that personal knowledge is required. Fed. R. Civ. P. 56(e); *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001).[4] Nonetheless, Defendant asserts that the personal knowledge requirement is satisfied where, as here, an

---

[4]Federal Rule of Civil Procedure 56(e) governs the form of affidavits required to support or oppose a motion for summary judgment, but the rule is applicable on this motion to dismiss given the jurisdictional nature of Defendant's challenges to the complaint.

United States District Court

For the Northern District of California

1   individual bases his or her declaration on reports prepared by staff members of computerized

2   data.

3          While Defendant's position apparently fails to consider that such evidence would be

4   inadmissible hearsay, the Court need not and does not decide that issue at this time.

5   Plaintiffs do not appear to dispute that Block could testify as to the disputed information if

6   she had personally reviewed the records, as opposed to relying on reports of CMS staff based

7   on their review of the records.  Nor do Plaintiffs appear to dispute that the individuals at

8   CMS who actually reviewed the records would be competent to testify as to the records'

9   contents.  In addition, Defendant stated at oral argument that, if the Court so required, Block

10  would look at the data herself and submit a revised declaration for the Court's consideration.

11  It therefore appears that Defendant could, if given the opportunity, present the disputed

12  testimony in an admissible manner.  The Court does not require Defendant to do so in this

13  instance, however, because the Court's rejection of Defendant's arguments on the individual

14  standing and mootness issues as to the remaining plaintiffs does not depend on the

15  admissibility of the Block declarations; even considering such evidence, the Court does not

16  find Defendant's arguments persuasive for the reasons discussed below.

17

18  **III.    Standing of Individual Plaintiffs**

19         Turning to the merits of Defendant's motion, Defendant first challenges the standing

20  of seven of the eight individual plaintiffs not addressed in Section I.[5]  Defendant's arguments

21  involve all three elements of Article III standing: injury in fact, causation, and redressability.

22  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

23         **A.    Injury in Fact**

24         To satisfy the first element of standing, "the plaintiff must have suffered an 'injury in

25  fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and

26  (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations

27  and internal quotations omitted).  Several plaintiffs in this case, or other individuals on their

28         [5]Defendant does not contest the standing of Plaintiff Josephine Guin.

6

United States District Court

For the Northern District of California

behalf, have submitted declarations stating that they have experienced stress and anxiety as a result of the problems encountered with their Part D prescription drug coverage. Defendant argues that this cannot satisfy the injury-in-fact requirement because Defendant's sovereign immunity prevents an award for damages. Notably, however, Defendant does not claim sovereign immunity from a suit, such as this one, that seeks declaratory and injunctive relief, nor does Defendant contend that stress and anxiety cannot constitute an actual, concrete injury in fact. Plaintiffs here do not seek monetary damages, and Defendant's immunity argument, even if correct, is therefore inapposite. Moreover, evidence regarding Plaintiffs' actual anxiety and distress distinguishes this case from those involving "hypothetical, speculative or other 'possible future' injuries [that] do not count in the standing calculus." *Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002). Consequently, Defendant's arguments regarding the sufficiency of Plaintiffs' alleged injuries in fact are unpersuasive.

## B.  Causation and Redressability

To satisfy the other elements of standing, a plaintiff's injury in fact must be fairly traceable to the challenged conduct of the defendant rather than to actions of a third party not before the court. *Lujan*, 504 U.S. at 560-61. Additionally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted). Defendant contends that Plaintiffs' alleged injuries – including allegations of being auto-enrolled into multiple insurance plans or encountering problems in switching plans, being overcharged for medication or health plan premiums, and being unable to access medication – are not attributable to Defendant's conduct. Instead, Defendant argues that Plaintiffs' alleged injuries are attributable to other actors, including private insurance plans and Plaintiffs themselves,[6] and that injunctive relief against Defendant therefore cannot redress such injuries. The Court addresses each of Defendant's arguments in turn below.

---

[6]Defendant also argues that the State of Arkansas is responsible for injuries alleged by Plaintiffs Emery and Snider. However, the Court need not consider that argument because it appears that both individuals are now deceased and will no longer be part of this case.

7

**United States District Court**
For the Northern District of California

1          **1.**        **Allegations Regarding Auto-Enrollment or Switching Plans**

2          Several plaintiffs allege injuries from Defendant's alleged actions in auto-enrolling

3 them in multiple plans and from problems encountered while attempting to switch plans.

4 Defendant argues that such injuries are not attributable to him, but the Court is not so

5 persuaded.  It is undisputed that CMS is responsible for the auto-enrollment process, and the

6 record establishes that CMS is also involved in the enrollment process when a dual eligible

7 elects to switch to another prescription drug plan.  Prindiville Decl. Ex. A at 8-11 (Def.'s

8 Resp. to Interrog. No. 6).  The "plan sends information necessary for CMS to add the

9 beneficiary to its records as an enrollee," and "CMS's system will immediately accept or

10 reject each transaction for processing and report the disposition of the transaction to the

11 plan."  *Id.* at 10.  CMS then processes the enrollment request, including "disenroll[ing] the

12 beneficiary from his or her current plan effective the first of the following month."  *Id.*

13 Without any evidence regarding Plaintiffs' specific situations, the Court cannot say that

14 Plaintiffs' injuries are, as a matter of undisputed fact, not traceable to Defendant.  To the

15 contrary, Plaintiffs' injuries regarding auto-enrollment in multiple plans, or problems

16 encountered when switching plans, may be traceable to CMS because CMS may have failed

17 to list an individual properly as an enrollee in a particular plan or may have enrolled

18 individuals in new plans without disenrolling them from their previous plans.  For example,

19 CMS admits that, at least initially, "[a] logic error in our new systems resulted in a relatively

20 small number of beneficiaries being carried on the books of more than one Medicare drug

21 plan."  Prindiville Decl. Ex. B.

22          **2.**        **Allegations Regarding Medication and Premium Overcharges**

23                  **a.**        **Attribution to Insurance Plans**

24          Multiple plaintiffs also allege injuries from being overcharged for their medication or

25 health plan premiums as a result of Defendant's alleged failure to enroll them in the Low-

26 Income Subsidy ("LIS") program.  Defendant contends that such injuries are not traceable to

27 any action by CMS, nor are they redressable by a judgment against Defendant, because

28

United States District Court

For the Northern District of California

1   CMS's records show that Plaintiffs have been properly classified as eligible for the LIS

2   program since the Medicare Part D program began on January 1, 2006.

3        However, Defendant's contention – that proper classification of an individual's

4   eligibility for the LIS program necessarily implies that the injuries they suffered are not

5   traceable to any action by CMS – is conclusory and unpersuasive.  Defense counsel was

6   simply incorrect when he asserted at oral argument that it is undisputed that CMS timely

7   provided information concerning each plaintiff's LIS eligibility information to his or her

8   respective Part D prescription drug plan.  Upon the Court's review of the evidence submitted,

9   it is clear that even after CMS classifies an individual as eligible for the LIS program, the

10  agency must take several affirmative steps before that person will be properly charged for

11  medication.  For example, CMS transfers eligibility information to the dual eligible's

12  prescription drug plan "between the 2nd and the 16th of the month, usually around the 5th of

13  the month," and then updates its system so that the information will be available to

14  pharmacists after CMS receives "certain billing information, known as 4Rx data," back from

15  the plan.  Prindiville Decl. Ex. A at 12-14 (Def.'s Resp. to Interrog. No. 8).  Thus, even if a

16  dual eligible may have been correctly classified in CMS's computer system as of January 1,

17  2006, or at any other relevant time, it is possible that CMS may have failed to transfer

18  information concerning that individual's LIS eligibility in a timely manner to the prescription

19  drug plan – a process that may take up to 76 days, Prindiville Decl. ¶ 4 – or may have failed

20  to timely update its system, thus preventing a pharmacist from accessing current eligibility

21  information.

22        Defendant has also presented evidence that CMS reports "LIS premium and

23  copayment information" of auto-enrollees to plans "when CMS performs auto-enrollment"

24  and at the end of each week as part of the "routine report of enrollment activity," and that

25  "CMS has provided plans with bi-weekly reports on LIS status of all their enrollees,

26  including those received through auto-enrollment."  Block Decl. ¶ 43.  While Plaintiffs do

27  not appear to contest at this time that this may be CMS's regular practice, the core of

28  Plaintiffs' allegations is that whatever practices CMS employs are not functioning as they

should, resulting in holes in the system and dual eligibles' falling through the cracks. Defendant has presented no evidence establishing that the eight remaining individual plaintiffs' eligibility was transferred in a timely manner to their Part D plans; even if CMS generally provides bi-weekly reports on enrollees' LIS status, that does not establish as an undisputed fact that any particular individual's eligibility information was timely transferred to the appropriate plan.  Accordingly, at this stage of the proceedings, this Court cannot find a lack of causation or redressability because Defendant has not demonstrated that these material jurisdictional issues are undisputed.

**b.      Attribution to Individual Plaintiffs Themselves**

Defendant also argues that Plaintiffs Irene Cram and Edward Randolph lack standing because their alleged injuries are traceable to their own actions rather than to Defendant's conduct.  First, Defendant contends that Plaintiff Cram's overcharges resulted from her own enrollment in a prescription drug plan with premiums that exceeded her subsidy amount by $4.59 per month.  In response, Cram argues that she was misled by the prescription drug plans into enrolling with the understanding that she would not be required to pay premiums. Even if Defendant is correct that Cram chose to enroll in plans with premiums higher than the LIS subsidy she receives, the Court finds that whether Cram received the proper materials from CMS, including notification that she had initially been auto-enrolled into a plan that did not require a premium, is a material disputed fact.

Similarly, the Court finds that whether Plaintiff Randolph's premium overcharges are traceable to Defendant's conduct is also a disputed fact.  Although Randolph did elect to change plans, the anxiety and anguish he has allegedly suffered appears to have resulted not from his decision to change plans but, rather, from his being enrolled in multiple plans and being charged premiums from each plan.  As discussed above, such injuries may be traceable to Defendant based on CMS's involvement in the enrollment process when an individual chooses to switch from one prescription drug plan to another.

United States District Court

For the Northern District of California

### 3.     Allegations Regarding Access to Medication

Defendant next argues that Plaintiff Xiufang Situ's allegations that she was unable to access her medication do not set forth any injury that is traceable to Defendant's conduct. Situ alleges that she was unable to obtain medication from her pharmacist in January through April 2006 because she did not have a Medicare Part D card during that time period.  Situ has presented evidence that her regular pharmacist, who had never before asked to see any special identification, asked for her Part D card when she attempted to obtain medication in January 2006.  He then asked to see her Social Security card as proof of identification, but Situ did not have that card with her, and she also thought it was strange that her pharmacist, who had never before asked for her Social Security card, was now asking to see it.  Although Situ may have been able to obtain her medication had she shown her Social Security card, it is disputed whether Situ received the required information regarding the Part D plan in which she was auto-enrolled and whether, had she received such information, her problems in accessing medication would have been avoided.  Defendant admits that such notification is part of the auto-enrollment process, and the Court therefore finds that a disputed material fact, intertwined with the merits of this case, exists as to Situ's standing.[7]  Prindiville Decl. Ex. A at 13 (Def.'s Resp. to Interrog. No. 8) ("As part of the auto-enrollment process, CMS notifies full benefit dual eligibles of the [prescription drug plan] to which they have been auto-enrolled. . . .").

### C.     Summary of Individual Plaintiffs' Standing

For all of the above reasons, disputed material facts remain on jurisdictional issues that are intertwined with the merits of this case, and the Court therefore DENIES Defendant's motion to dismiss the seven challenged individual plaintiffs based on lack of standing.  However, the Court is well aware that Plaintiffs ultimately bear the burden of establishing their standing to sue. *Lujan*, 504 U.S. at 561.  Thus, the Court's ruling does not

---

[7]In addition, it is not clear whether Situ was properly identified in the computer system available to pharmacists as a dual eligible who had been correctly auto-enrolled in a Part D plan and, if she were so identified, whether the pharmacist would nevertheless have asked Situ for identification.

1    mean that the individual plaintiffs necessarily have standing; it means only that Defendant

2    has not persuaded the Court that finding a lack of standing is appropriate at this time.

3

4    **IV.    Standing of Organizational Plaintiffs**

5        In addition to challenging the standing of individual plaintiffs, Defendant also argues

6    that the four organizational plaintiffs lack standing.  An organization may have standing to

7    sue either on behalf of its members or on its own behalf.  *Smith v. Pac. Props. & Dev. Corp.*,

8    358 F.3d 1097, 1101 (9th Cir. 2004).  Defendant contends that the organizations named in

9    the complaint lack either type of standing, while Plaintiffs assert that the requirements for

10   both types are satisfied.  The Court addresses each type of potential standing in turn below.

11       **A.    Representational Standing**

12       Plaintiffs assert that Plaintiffs CARA and Action Alliance have standing to sue on

13   their members' behalf.  Three criteria must be satisfied before an organization has standing

14   under Article III to bring suit on behalf of its members: first, the organization's members

15   must have standing to sue individually; second, the organization must be seeking to protect

16   interests that are germane to its purpose; and, third, neither the claim asserted nor the relief

17   requested must require direct participation of the organization's members in the lawsuit.

18   *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  Defendant here

19   challenges whether Plaintiffs have satisfied the first and third criteria; he does not challenge

20   that the organizations are seeking to protect interests that are germane to their purpose.

21       First, Defendant argues that the two organizations' claims of representational standing

22   fail because the organizations do not identify specific members who would have standing to

23   sue in their own right.  Although Defendant cites to multiple cases where courts have

24   required an organization to identify at least one member who has suffered injury to

25   demonstrate standing, *see* Reply at 8 & n.4, the Ninth Circuit has found no such requirement.

26   In *California Rural Legal Assistance, Inc. v. Legal Services Corporation*, the court held that

27   the plaintiff unions established their standing to bring suit by alleging that "'[m]any members

28   of the AFL-CIO are § 245A legal residents who utilize LSC [Legal Services Corporation]

United States District Court

For the Northern District of California

funded legal services programs'" and that "many of [another union's] members are § 245A legal residents who 'suffer from the full range of legal problems affecting the working poor and are financially eligible for legal services.'"  917 F.2d 1171, 1174 (9th Cir. 1990).  The court explained that "[t]hese members would clearly be adversely affected if the [defendant's] regulation is enforced.  We find these facts, which [the defendant] failed to rebut below, sufficient to establish the unions' standing to sue."  *Id.* at 1174-75.  Based on this binding authority, the Court rejects Defendant's argument that an organizational plaintiff seeking representational standing must identify at least one member by name.

However, Plaintiffs in this case do not adequately allege that any of their members would have standing to sue.  As to Plaintiff CARA, Plaintiffs allege only that "[m]any of its individual members are themselves dual eligibles struggling with Medicare Part D enrollment problems."  SAC ¶ 37.  Similarly, as to Plaintiff Action Alliance, Plaintiffs allege only that "its staff and volunteers have been diverted from other activities due to the need to help members and other seniors navigate Part D plan issues and problems."  *Id.* ¶ 40.  Neither of these allegations is sufficient to establish that individual members of these organizations have suffered injuries that are traceable to Defendant.  As Plaintiffs acknowledged at oral argument, not all Part D problems are traceable to Defendant or redressable by the injunctive relief Plaintiffs seek, and Plaintiffs do not seek to remedy problems caused by individual pharmacists or plans.  Accordingly, the Court finds that Plaintiffs CARA and Action Alliance have failed to satisfy the first criteria for representational standing.

Defendant next argues that the organizations lack representational standing because individual participation in this lawsuit is required, but the Court is not persuaded that individual members' involvement is necessary to address the claims raised or the relief sought in this case.  The authority relied on by Defendant is distinguishable because those cases involved claims for individualized damages or restitution; this case, by contrast, involves no damages claims, and Plaintiffs do not even seek individualized injunctive relief but instead ask for injunctive relief regarding Defendant's system-wide practices.  For example, in *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975), the Supreme Court found a lack of

1    representational standing in a case involving individual claims for damages.  Similarly, in

2    *Lake Mohave Boat Owners Association v. National Park Service*, 78 F.3d 1360, 1367 (9th

3    Cir. 1996), the Ninth Circuit found no representational standing because each organization

4    member's "amount of restitution may differ."  Cases involving such individualized claims for

5    relief differ from cases like this one, where the organization "seeks a declaration, injunction,

6    or some other form of prospective relief," in which case "it can reasonably be supposed that

7    the remedy, if granted, will inure to the benefit of those members of the association actually

8    injured."  *Warth*, 422 U.S. at 515; *see also Lake Mohave*, 78 F.3d at 1367 (holding that the

9    association had standing to sue for prospective relief even though it lacked standing to sue

10   for restitution).  The Court therefore rejects Defendant's argument that representational

11   standing would be improper because individual members' participation is required in this

12   lawsuit.

13          **B.       Organizational Standing**

14          In addition to arguing that Plaintiffs CARA and Action Alliance have representational

15   standing, Plaintiffs also contend that all four organizational plaintiffs have standing to sue on

16   their own behalf.  To have such standing, an organization "must, like any other plaintiff,

17   satisfy the constitutional and prudential considerations of standing."  *J.L. v. Soc. Sec. Admin.*,

18   971 F.2d 260, 268 n.8 (9th Cir. 1992).  As noted above, the constitutional standing

19   requirements are injury in fact, causation, and redressability.  *Lujan*, 504 U.S. at 560.  "[A]n

20   organization may satisfy the Article III requirement of injury in fact if it can demonstrate:

21   (1) frustration of its organizational mission; and (2) diversion of its resources to combat the

22   particular [problem] in question."  *Smith*, 358 F.3d at 1105.  Prudential standing

23   considerations include the requirements that a plaintiff must be asserting rights within the

24   "zone of interests protected by the law invoked" and that a litigant does not have standing to

25   "rais[e] another person's legal rights."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).

26          The organizational plaintiffs in this case allege missions of advocacy for persons with

27   disabilities or the elderly, and they further allege that they have had to divert resources from

28   other work to focus on enrollment and subsidy issues associated with dual eligibles' Part D

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    benefits.  These allegations may not be sufficient to establish an injury in fact because it is

2    unclear whether Defendant's alleged shortcomings in implementing the Part D program

3    caused the alleged diversion of resources, or whether the diversion of resources was

4    necessitated solely by the creation of a new and complex benefits program.  The Court need

5    not decide whether the four organizational plaintiffs have satisfied the injury-in-fact

6    requirement, however, because it finds that these plaintiffs fail to satisfy the prudential

7    standing requirements, as discussed below.

8         The prudential "zone of interests test is not intended to impose an onerous burden on

9    the plaintiff," *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 940 (9th Cir. 2005), and

10   the Supreme Court has explained that "the test denies a right of review if the plaintiff's

11   interests are so marginally related to or inconsistent with the purposes implicit in the statute

12   that it cannot reasonably be assumed that Congress intended to permit the suit," *Clarke v.*

13   *Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).  Moreover, "there need be no indication of

14   congressional purpose to benefit the would-be plaintiff," and the test is not "especially

15   demanding."  *Id.* at 399-400.

16        Nonetheless, the Court finds that the organizational plaintiffs in this case fail to satisfy

17   the zone of interests test because they have failed to rebut Defendant's argument that the

18   Medicare statutory scheme is intended to protect individuals, not advocacy organizations.

19   Two cases cited by Defendant – and not discussed, let alone distinguished by, Plaintiffs – are

20   persuasive on this point.  First, in a case where an organization sought to challenge the No

21   Child Left Behind Act, the D.C. Circuit held that the organization lacked standing because

22   "[t]he only interests arguably enjoying implicit protection here are those of parents, students,

23   educators and education officials; although the advocacy groups may be 'representatives' of

24   parents and students, the *interests* to be protected are those of the parents and students, not of

25   the organizations."  *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir.

26   2005).  Similarly, in an order granting stay of a district court's ruling pending appeal, Justice

27   O'Connor, sitting as the Circuit Justice, observed that:

28

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8

> IRCA [the Immigration Reform and Control Act of 1986] was clearly meant to protect the interests of undocumented aliens, not the interests of organizations such as respondents.  Though such organizations did play a role in the IRCA scheme – during the amnesty period, they were so-called "qualified designated entities," which were to "assis[t] in the program of legalization provided under this section," [8 U.S.C.] § 1255a(c)(2) – there is no indication that IRCA was in any way addressed to their interests.  The fact that the INS [Immigration and Naturalization Service] regulation may affect the way an organization allocates its resources – or, for that matter, the way an employer who currently employs illegal aliens or a landlord who currently rents to illegal aliens allocates its resources – does not give standing to an entity which is not within the zone of interests the statute meant to protect.

9
10
*Immigration & Naturalization Serv. v. Legalization Assistance Project of Los Angeles County Fed'n of Labor*, 510 U.S. 1301, 1305 (1993).  Although this was only an opinion of a

11
12
Circuit Justice as opposed to the opinion of the full Supreme Court, the Ninth Circuit interpreted Justice O'Connor's opinion as holding that the organizational plaintiffs lacked

13
14
standing to sue on their own behalf.  *Immigrant Assistance Project of Los Angeles County Fed'n of Labor v. Immigration & Naturalization Serv.*, 306 F.3d 842, 867 (9th Cir. 2002).

15
16
As in the above two cases, the organizational plaintiffs in this case seek to challenge an act that protects interests of others – here, Medicare beneficiaries – rather than the interests of

17
18
the organizations themselves.  Consequently, the organizational plaintiffs cannot satisfy the "zone of interests" element of standing.

19
20
Plaintiffs unpersuasively assert that finding a lack of standing in this case based on the zone of interests test would lead to the unsupported conclusion that advocacy organizations

21
22
could never have standing to challenge the Secretary's actions under any Social Security Act benefit program.  As Defendant correctly observes, finding that organizations lack standing

23
24
to sue on their own behalf does not mean that they lack standing to sue on behalf of their members or clients.  *See, e.g., id.* at 867 (explaining that "Justice O'Connor held that the

25
26
IRCA did not give organizational plaintiffs standing to sue on their *own* behalf" but that, "[i]mportantly, Justice O'Connor also held that the IRCA gave organizational plaintiffs

27
28
representative standing to sue on behalf of their *members* whose claims are ripe").  Indeed, Plaintiffs blur the distinction between representational and organizational standing by

16

1   arguing that organizations have, in prior cases, been allowed to advance claims "on behalf

2   of" Medicare beneficiaries and providers.  Opp'n at 14-15.  Plaintiffs conceded at oral

3   argument that courts that have allowed organizations to proceed on behalf of Medicare

4   beneficiaries or providers have relied on representational standing rather than finding that the

5   organizations had standing to sue on their own behalf, and Plaintiffs have pointed to no case

6   in which an advocacy organization was found to have standing to sue on its own behalf to

7   challenge provisions of the MMA.  To the contrary, the authorities relied on by Plaintiffs

8   demonstrate only that such organizations may have standing to sue on behalf of their

9   members when the requirements for representational standing are satisfied.

10          **C.     Summary of Organizational Plaintiffs' Standing**

11          In sum, the four organizational plaintiffs in this case have satisfied neither the

12   requirements for representational standing nor those for organizational standing, and the

13   Court therefore GRANTS Defendant's motion to dismiss the organizational plaintiffs from

14   this case.  None of the four organizations can satisfy the prudential requirements for

15   organizational standing, nor could they cure this deficiency if given leave to amend.

16   However, because Plaintiffs CARA and Action Alliance may, if given leave to amend, be

17   able to allege additional facts that would give their members individual standing to sue,

18   dismissal of Plaintiffs CARA and Action Alliance is without prejudice.

19

20   **V.     Mootness**

21          Defendant's third argument is that four individual plaintiffs' claims are now moot

22   because the individuals have been refunded previously charged payments or are no longer

23   having premium payments deducted from their Social Security benefits checks.  The only

24   evidence submitted by Defendant on his mootness argument is contained in the first and

25   second Block declarations, the admissibility of which Plaintiffs dispute.  Even considering

26   such evidence, however, the mootness challenges must still be denied because Defendant has

27   failed to meet his "stringent" burden of demonstrating that it is "absolutely clear that the

28   allegedly wrongful behavior could not reasonably be expected to recur."  *White v. Lee*, 227

**United States District Court**
For the Northern District of California

17

F.3d 1214, 1243 (9th Cir. 2000) (citations and internal quotations omitted).  Plaintiffs'

declarations establish that they continue to have problems related to the claims in this case.

*E.g.*, Guin Decl. ¶ 10; Randolph Decl. ¶¶ 13-14; Sokolowski Decl. ¶ 16.  More significantly,

Defendant has not established that the systemic problems alleged by Plaintiffs do not exist

and that, therefore, resolution of a specific claim necessarily means that the same issue will

not arise again, or that Plaintiffs will not face similar problems if they choose to change Part

D plans in the future.  *See, e.g.,* Prindiville Decl. Exs. F, H (discovery received from

Defendant indicating that there are time lags in the enrollment and disenrollment process and

also that many dual eligibles will be reassigned via auto-enrollment in the fall).  Accordingly,

Defendant's motion to dismiss based on mootness is DENIED.


**VI.    Presentment**

        Finally, the parties agree that this Court may have jurisdiction over this case under

42 U.S.C. § 405(g) only if Plaintiffs have satisfied both presentment and exhaustion

requirements – i.e., that they have presented a claim for benefits to the Secretary and have

fully pursued all available administrative remedies.  *Mathews v. Eldridge*, 424 U.S. 319, 328

(1976).  The presentment requirement is nonwaivable, but the exhaustion requirement may

be waived.  *Id.*  Defendant contends that six of the remaining individual plaintiffs – Rosa

Begun, Jo Ann Burbes, Irene Cram, Willard Ellis, Josephine Guin, and Kazimiera

Sokolowski – have failed to present their claims to the Secretary, but he does not at this time

move to dismiss any of Plaintiffs' claims on exhaustion grounds.

        Although Defendant contends that CMS has no record of any calls or other complaints

from these six individuals, Block Decl. ¶¶ 52, 54-58, CMS also admits that it did not start

tracking complaints until May 2006, Prindiville Decl. Ex. A at 8 (Def.'s Resp. to Interrog.

No. 5).  In addition, Plaintiffs have submitted evidence that Plaintiffs Begun, Burbes, Cram,

and Sokolowski, or others on their behalf, have contacted CMS regarding their Part D

problems.  Begun Decl. ¶ 6; Burbes Decl. ¶ 10; Smoucha Decl. ¶¶ 4-6 (advocate assisting

Plaintiff Burbes with calls to CMS); Cram Decl. ¶¶ 7, 9; Sokolowski Decl. ¶ 19 (daughter

United States District Court

For the Northern District of California

1  assisting Plaintiff Sokolowski with calls to CMS); Yu Decl. ¶ 4 & Ex. A (attorney assisting

2  Plaintiff Sokolowski with a telephone call and e-mail complaint to CMS).  Accordingly, the

3  Court cannot say that lack of presentment has been established as a matter of undisputed fact

4  as to these four individuals, and the Court therefore DENIES Defendant's motion to dismiss

5  Plaintiffs Begun, Burbes, Cram, and Sokolowski based on lack of presentment.

6          Unlike the above four individuals, however, Plaintiffs Ellis and Guin have not

7  presented evidence that they, or any others on their behalf, have contacted CMS regarding

8  their problems in obtaining Part D benefits.[8]  Instead, Ellis's brother states only that he

9  contacted the National Senior Citizens Law Center, who in turn contacted Ellis's Part D plan

10  and pharmacy.  Ellis Decl. ¶ 5.  Similarly, Guin states that she contacted Florida Legal

11  Services, who contacted the Florida Medicaid office and Social Security Administration on

12  Guin's behalf.  Guin Decl. ¶ 7; Swerlick Decl. ¶¶ 7-8 (attorney assisting Plaintiff Guin).

13          While it may therefore appear that Ellis and Guin have failed to satisfy the

14  presentment requirement, the Court is mindful that "[c]ourts have interpreted the presentation

15  requirement liberally."  *Lopez v. Heckler*, 725 F.2d 1489, 1503 (9th Cir. 1984), *vacated on*

16  *other grounds sub nom. Heckler v. Lopez*, 469 U.S. 1082 (1984).  In this case, CMS directs

17  complaints regarding Part D plans to the individual plans and notes that complaints are

18  "tracked and . . . under review" as long as the beneficiary has contacted either the plan or

19  CMS.  Prindiville Decl. Ex. V (August 2006 tip sheet on "Handling Medicare Part D

20  Prescription Drug Plan Complaints").  Similarly, Defendant acknowledges in his filings that

21  individuals contesting liability for the LIS are directed to go through individual state

22  Medicaid offices.  Mot. at 23.  Thus, even though Plaintiffs Ellis and Guin did not directly

23  contact CMS, they followed the complaint procedures established by CMS.  Defendant has

24  not argued that contacting the relevant Part D plan or Medicaid office is insufficient to satisfy

25  a plaintiff's burden regarding presentment, nor would it make sense to allow Defendant to

26  instruct individuals to contact a particular entity to initiate a complaint and then later argue

27          [8]Plaintiffs acknowledge that "at least two [plaintiffs] apparently did not" contact
CMS, but they do not specify whether those two plaintiffs are Ellis and Guin.  Suppl. Opp'n

28  at 8 n.4.

United States District Court

For the Northern District of California

that following such instructions fails to present properly a claim for review.  Consequently, the Court finds that complaints made to a Part D plan or a state Medicaid office are sufficient to satisfy the presentment requirement in this context.  Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiffs Ellis and Guin based on lack of presentment.[9]

**CONCLUSION**

For the reasons discussed above, IT IS HEREBY ORDERED that:

1.  Plaintiff Beer is dismissed from this case without prejudice.

2.  Plaintiffs shall show cause as to why Plaintiffs Emery, Perillo, Schwartzle, and Snider should not be dismissed from this case by filing a written response on or before **January 16, 2007.**  Failure to file a timely response shall result in the dismissal of Plaintiffs Perillo and Schwartzle without prejudice and dismissal of Plaintiffs Emery and Snider with prejudice.  If Plaintiffs file a timely response, Defendant may file a reply on or before **January 23, 2007.**  The matter will then be deemed submitted on the papers unless the Court otherwise orders oral argument.

3.  Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to the four organizational plaintiffs and DENIED in all other respects.  Plaintiff Illinois Network of Centers for Independent Living and Plaintiff Stony-Hayes Center for Independent Living are dismissed with prejudice.  Plaintiff California Alliance for Retired Americans and Plaintiff Action Alliance of Senior Citizens of Greater Philadelphia are dismissed without prejudice because they may be able to allege facts sufficient to support representational standing if given leave to amend.

---

[9]Plaintiffs also raise two alternative arguments: first, that presentment is satisfied by Plaintiffs' initial application for Medicare benefits and does not require presentation of a particular claim for benefits under Part D and, second, that jurisdiction would be proper under federal question or mandamus jurisdiction even if the Court were to find a lack of presentment.  Because the Court finds that all six challenged individual plaintiffs have adequately presented their Part D claims, it need not reach Plaintiffs' alternative arguments at this time.

1      4.  The Court will set a deadline for Plaintiffs to amend the complaint following its

2  determination of whether Plaintiffs Emery, Perillo, Schwartzle, and Snider should remain in

3  this case.

4

5  **IT IS SO ORDERED.**

6

7  Dated:   12/18/06

8                                                    THELTON E. HENDERSON, JUDGE
                                                     UNITED STATES DISTRICT COURT

9

10

**United States District Court**
For the Northern District of California

21