IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

XIUFANG SITU, et al.,

          Plaintiffs,

v.

MICHAEL O. LEAVITT,

          Defendant.

NO. C06-2841 TEH

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

This matter came before the Court on Monday, October 23, 2006, on Defendant's motion to dismiss and Plaintiffs' motion for class certification. The Court granted in part and denied in part Defendant's motion to dismiss on December 18, 2006. Now, after carefully considering the parties' written and oral arguments, the record, and governing law, the Court GRANTS IN PART Plaintiffs' motion for class certification. The Court finds class certification to be appropriate but modifies Plaintiffs' proposed class definition for the reasons discussed below.

**BACKGROUND**

Plaintiffs' class action complaint arises out of the Medicare Part D prescription drug program created by Title I of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"). Prior to 2006, Medicare beneficiaries who were also eligible for Medicaid received their prescription drug coverage from their states' Medicaid agencies. However, prescription drug coverage for these individuals, known as "dual eligibles," ended under Medicaid on December 31, 2005. As of January 1, 2006, prescription coverage for dual eligibles was shifted from Medicaid to the Medicare Part D program.

1    Defendant Michael O. Leavitt, the Secretary of the United States Department of
2 Health and Human Services ("HHS"), is responsible for the conduct and policies of HHS,
3 including the Centers for Medicare and Medicaid Services ("CMS"), which administers the
4 Medicare program. Defendant is thus responsible for implementing the changes in
5 prescription drug coverage for dual eligibles under the MMA.
6    The second amended complaint names thirteen individual plaintiffs seeking to
7 represent the following class: "All full benefit dually eligible Medicare beneficiaries who are
8 unable to receive the full benefits of Medicare Part D prescription drug coverage and/or the
9 Low Income Subsidy program due to the actions or failure to act of the Secretary of Health
10 and Human Services." Second Am. Compl. ¶ 49 (hereinafter "SAC"). Four organizations
11 are also named as plaintiffs based on allegations that they have had to divert resources to
12 counsel their clients and members on changes in their prescription drug coverage following
13 enactment of the MMA.
14    Plaintiffs raise three challenges to the provision of Part D benefits to dual eligibles.
15 First, Plaintiffs allege that Defendant has failed to implement "uniformly and properly" the
16 requirement that dual eligibles be auto-enrolled into a private prescription drug plan if they
17 do not enroll in a plan of their own choice, and that therefore many dual eligibles have not
18 been enrolled in a Part D prescription drug plan. *Id.* ¶ 3. Second, Plaintiffs allege that
19 Defendant has failed to inform Part D plans on a timely basis of the identity of dual eligibles
20 automatically enrolled in their respective plans and of the beneficiaries' entitlement to the
21 Low Income Subsidy ("LIS"), a program established by the MMA to waive the monthly
22 Part D plan premium and annual deductible and to reduce cost sharing by the beneficiary. *Id.*
23 Finally, Plaintiffs allege that Defendant has failed to process changes in plan enrollment
24 "adequately and uniformly" when dual eligibles decide to change prescription drug plans. *Id.*
25    On December 18, 2006, the Court dismissed one individual plaintiff without prejudice
26 based on Plaintiffs' counsel's representation that she was no longer able to participate in this
27 lawsuit. The Court also dismissed all four organizational plaintiffs, although dismissal of
28 two of these four plaintiffs was with leave to amend. In addition, the Court ordered Plaintiffs

2

to show cause as to why the Court should not dismiss four other individual plaintiffs – two who appear to be deceased and two whom Plaintiffs' counsel have been unable to contact. Plaintiffs have until January 16, 2007, to file a response to that order to show cause, but the Court need not determine whether those individuals should remain in this case before deciding the pending motion for class certification because their presence or absence does not affect the Court's analysis of relevant issues.

**DISCUSSION**

**I.    Jurisdiction over Claims of Unnamed Class Members**

Defendant first argues that class certification would be improper because this Court lacks jurisdiction over claims brought by unnamed class members. Plaintiffs assert three grounds for jurisdiction, each of which the Court discusses in turn below.

**A.    42 U.S.C. § 405(g)**

As explained in the Court's order on Defendant's motion to dismiss, the parties agree that 42 U.S.C. § 405(g) provides jurisdiction over Plaintiffs' claims if Plaintiffs have satisfied both the presentment and exhaustion requirements – i.e., if they have presented a claim for benefits to the Secretary and have fully pursued all available administrative remedies. *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976). This holds true for unnamed class members as well as for named class representatives. *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979); *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975). The presentment requirement is nonwaivable, but the exhaustion requirement may be waived. *Eldridge*, 424 U.S. at 328. In this case, Plaintiffs argue that class members satisfied the presentment requirement by making initial claims for benefits and that the exhaustion requirement should be waived.

**1.    Presentment**

This Court has already ruled that the presentment requirement should be interpreted liberally, and it is therefore sufficient for a plaintiff to have made a phone call to or otherwise contacted CMS with a complaint, or to have complained to the relevant Part D plan or, in the

3

case of individuals contesting liability for the LIS, the appropriate state Medicaid office. Order Granting in Part & Denying in Part Def.'s Mot. to Dismiss at 19-20. However, Plaintiffs propose to include in the class individuals who did not make even these minimal contacts, and the Court must therefore now decide whether, as Plaintiffs argue, a plaintiff satisfies the presentment requirement by making an initial claim for benefits without also raising a complaint regarding the inability to obtain specific benefits under Part D.

To support their argument, Plaintiffs rely on the Ninth Circuit's decision in *Briggs v. Sullivan*, 886 F.2d 1132 (9th Cir. 1989). The *Briggs* plaintiffs were individuals who had been determined eligible for disability benefits but who were not being paid such benefits because they were without a representative payee. Representative payees are required when, for example, "the Secretary determines that the would-be recipient of benefits is unable competently to manage his affairs" or because benefits eligibility is based on "a disability due to alcohol or drug dependency." *Id.* at 1134-36. Some plaintiffs had received no payments because they were unable to find representatives satisfactory to the Secretary, while others had their payments suspended when their current representatives could not continue that role. *Id.* at 1133. On the presentment question, the court concluded the following:

> At oral argument, the Secretary acknowledged that each named plaintiff, and every member of the class as certified, has already been adjudged by the Secretary to be eligible for benefits, and need only obtain a satisfactory representative payee in order to receive, or resume receiving, payments. The Secretary then conceded that there is no problem with presentment here, since the appellant-beneficiaries have already had their claims for entitlement resolved in their favor, and their benefits have been withheld or suspended only because they lack an appointed representative. We agree. ***The presentment requirement is satisfied when an individual makes a claim for benefits, and the Secretary determines that the claimant meets the eligibility requirements for those benefits.*** When benefits are suspended, or when they are not paid to begin with, because of a requirement collateral to the Secretary's eligibility criteria [FN6], the claimant's dispute with the Secretary is not, strictly speaking, a "claim for benefits" in the sense in which the phrase was used by the Supreme Court in *Mathews* [*v. Eldridge*] and [*Bowen v.*] *City of New York* [476 U.S. 467 (1986)]. Accordingly, having presented their claims for benefits to the Secretary once already, there was no requirement in this case that the class members

4

> "re-present" their claims to the Secretary in order to obtain review of the collateral issue.
>
> [FN6] The Secretary concedes that the decision to require a representative payee is wholly collateral to the question of a claimant's entitlement to benefits. *Infra* at 1139-1140.

*Id.* at 1139 (emphasis added).

Unlike in *Briggs*, however, Defendant here does not concede that there is no problem with presentment. Significantly, the Secretary in *Briggs* affirmatively decided not to provide benefits to individuals who were otherwise eligible because such individuals lacked a representative payee – an admittedly collateral requirement established by the Secretary. Here, by contrast, there is no allegation that the Secretary suspended or refused to pay Part D benefits because of any such requirement. Instead, Plaintiffs' alleged systemic problems with the Part D benefits system, which stem from alleged failures to implement adequate policies or to complete certain actions in a timely fashion, are logically quite different from a decision by the Secretary that certain classes of otherwise eligible individuals cannot receive benefits unless they satisfy an additional, collateral requirement. In the latter case, presentment, or re-presentment as the Ninth Circuit describes it, would be unnecessary because the Secretary is already aware that the claimant seeks benefits, is eligible for benefits, but will not receive benefits because he or she cannot satisfy a non-eligibility-related requirement. In this case, without any claim that a specific Part D benefit has been denied, the Secretary would only be on notice that a claimant sought Part D benefits and was eligible for those benefits; there would be no way of knowing that the claimant was not actually receiving the benefits to which he or she was entitled.

The Court therefore agrees with a district court in the Southern District of New York, which reached the following conclusion in a case brought on behalf of dual eligibles prior to the January 1, 2006 transition from Medicaid to Medicare Part D:

> The dual eligibles whose interests Plaintiffs seek to represent are, in effect, in no different a position from individuals entitled to receive non-MMA Medicare benefits. Any Medicare recipient runs the risk that he or she will seek medical services and, due to a glitch in a database, be informed, erroneously, that he or she is

5

> not in the system. The Medicare Act does not contemplate that such an individual can file a complaint in federal court before even attempting to present a claim to the agency. It would be a wholesale subversion of the Medicare Act's legislative intent to avoid overburdening the courts if beneficiaries were able to bring federal cases where a simple phone call, e-mail, or letter might straighten out the problem. . . . This Court recognizes that the allegation is one of systemic rather than individual proportions, but that weighs in favor of doing what the statute requires: channeling "virtually all legal attacks through the agency, . . . assur[ing] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts. . . ."

*N.Y. Statewide Senior Action Council v. Leavitt*, 409 F. Supp. 2d 325, 329 (S.D.N.Y. 2005) (citation omitted). Two district courts in this circuit, one of which was also analyzing a case involving dual eligibles' claims under Part D, agree that a plaintiff must present a particular claim for benefits, and cannot rely on his or her initial application for benefits, to satisfy the jurisdictional presentment requirement. *Indep. Living Ctr. of S. Cal., Inc. v. Leavitt*, Case No. 2:06-cv-0435-MCE-KJM, 2006 U.S. Dist. LEXIS 44312, at *11-12 (E.D. Cal. June 29, 2006) (Part D case involving dual eligibles); *Grijalva v. Shalala*, Case No. 93-711 TUC ACM, 1995 WL 523609, at *4-5 (D. Ariz. July 18, 1995) (case involving Medicare beneficiaries who were denied services by their HMOs (health maintenance organizations)). Indeed, to adopt Plaintiffs' position would render the presentment requirement meaningless, since any individual who had applied for benefits would, under Plaintiffs' theory, be deemed to have adequately presented a claim for judicial review.

Consequently, the Court concludes that making an initial application for Medicare benefits is insufficient to satisfy the presentment requirement. Instead, this nonwaivable jurisdictional requirement is satisfied only by presenting a claim to the Secretary regarding denial of a specific Part D benefit or, alternatively, by making a similar claim to the appropriate Part D plan or state Medicaid agency.

**2.  Exhaustion**

Regarding the second jurisdictional requirement under § 405(g), Plaintiffs make no allegation that unnamed class members have exhausted their administrative remedies and instead argue only that exhaustion should be waived. Waiver of the exhaustion requirement

6

is proper if the asserted claim is: "(1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal to the relief sought will cause an injury which retroactive payments cannot remedy (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." *Briggs*, 886 F.2d at 1139 (internal citations omitted). Although Plaintiffs raised this waiver argument only in their reply papers, the Court provided Defendant an opportunity to respond at oral argument, where the Court asked Defendant to identify which prongs of the waiver analysis he contended Plaintiffs could not meet and explain why those prongs were not satisfied. Defendant responded that exhaustion was not at issue before the Court at this time, and Plaintiffs' contention that exhaustion should be waived is therefore uncontested for purposes of this motion.

### B. Other Asserted Grounds for Jurisdiction

Plaintiffs also assert that this Court need not rely on 42 U.S.C. § 405(g) for jurisdiction and may instead also find jurisdiction under 28 U.S.C. § 1331, which provides for federal-question jurisdiction, or 28 U.S.C. § 1361, which provides for mandamus jurisdiction. Neither of these arguments is persuasive.

Jurisdiction may be proper under 28 U.S.C. § 1331 where application of § 405 "would mean no review at all," *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 19 (2000) (citation omitted), but Plaintiffs have failed to persuade this Court that requiring presentment would result in the lack of judicial review. Similarly, although mandamus jurisdiction may be appropriate in certain cases against the Secretary, it is only proper if the Secretary has a clear, non-discretionary duty and no other adequate remedy is available. *Johnson v. Shalala*, 2 F.3d 918, 924-25 (9th Cir. 1993); *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1998). Plaintiffs have made only a conclusory statement, without citation to any authority, that "the Secretary has a clear, non-discretionary duty to ensure that dual eligibles receive prescription drugs pursuant to Part D." Opp'n to Mot. to Dismiss at 21. Moreover, Plaintiffs have failed to demonstrate the lack of any other adequate remedy. Based on all of

7

the above, this Court finds no basis for exercising jurisdiction under either 28 U.S.C. § 1331 or 28 U.S.C. § 1361.  Jurisdiction in this case exists only under 42 U.S.C. § 405(g).

## II. Class Definition

Defendant next asserts that, even if this Court has jurisdiction over unnamed class members' claims, class certification would still be improper because there is no identifiable or ascertainable class.  Defendant's objection appears based primarily on his assertion that Plaintiffs' failure to challenge a specific policy or procedure precludes class treatment.  The Court addresses this argument below when discussing commonality, but Defendant's argument also raises a secondary issue.  Before a class can be certified, it must be sufficiently defined "so that it is administratively feasible for the court to determine whether a particular individual is a member." *Hagen v. City of Winnemucca*, 108 F.R.D. 61, 63 (D. Nev. 1985).  Put another way, the class definition "should be precise, objective, and presently ascertainable." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

Plaintiffs argue that class members need not be identifiable for a Rule 23(b)(2) class, as opposed to a Rule 23(b)(3) class, because the Court will not need to provide notice to the class, provide an opportunity to opt out of the class, or make individualized determinations of damages.  However, although the Federal Judicial Center's *Manual for Complex Litigation* states that an identifiable class "may not" be required for (b)(2) classes, it later explains that "[t]here is no need to identify every individual member at the time of certification of a Rule 23(b)(2) class action for injunctive relief *as long as the court can determine at any given time whether a particular individual is a member of the class*." *Manual for Complex Litigation (Fourth)* § 21.222 (2004) (emphasis added).  Thus,

> [c]are should be taken to define the class in objective terms capable of membership ascertainment when appropriate, without regard to the merits of the claim or the seeking of particular relief.  Such a definition in terms of objective characteristics of class members avoids problems of circular definitions which depend on the outcome of the litigation on the merits before class members may be ascertained, and does not require the court to engage in an impermissible consideration of the merits of the claims in connection with its class certification determination.

8

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 6.14 (4th ed. 2002).

In this case, Plaintiffs propose the following class definition: "All full benefit dually eligible Medicare beneficiaries who are unable to receive the full benefits of Medicare Part D prescription drug coverage and/or the Low Income Subsidy program due to the actions or failure to act of the Secretary of Health and Human Services." Second Am. Compl. ¶ 49 (hereinafter "SAC"). This definition is improper because it would be impossible to determine whether a dual eligible was a member of the class without reaching the merits of Plaintiffs' claims – i.e., without determining the contours of the Secretary's obligations under the MMA.

To avoid this problem, the Court finds it appropriate to focus the class definition on those issues actually alleged in Plaintiffs' complaint, rather than simply referring to amorphous "actions or failure to act" by the Secretary. Accordingly, the Court modifies the class definition to be:

> All full benefit dually eligible Medicare beneficiaries who have not received the full benefits of Medicare Part D prescription drug coverage or the Low Income Subsidy program because of one or more of the following: (1) the Secretary did not follow all auto-enrollment requirements after the beneficiary failed to enroll in a plan of his or her choice; (2) at the time benefits were sought, the beneficiary's Part D plan had not been informed by the Secretary of the beneficiary's enrollment in the plan or his or her entitlement to the Low Income Subsidy; or (3) the beneficiary was listed by the Secretary as a member of more than one Part D plan or as a member of the incorrect Part D plan after the beneficiary elected to change plans.

Pursuant to Section I above, membership in any certified class will be further limited by the jurisdictional presentment requirement.

### III.   Federal Rule of Civil Procedure 23

The Court now turns to whether certification of the redefined class would be proper under Rule 23 of the Federal Rules of Civil Procedure. A party seeking to certify a class must demonstrate that it has met all four requirements of Rule 23(a) and at least one of the

9

requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(a) allows a class to be certified:

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Zinser*, 253 F.3d at 1186. That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy.

Rule 23(b) provides for the maintenance of three types of class actions. Fed. R. Civ. P. 23(b). Plaintiffs seek to certify the class under Rule 23(b)(2), which allows a class to be certified if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

The party seeking certification must provide facts to satisfy the above requirements, *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977), and the district court must conduct a "rigorous analysis" of the moving party's claims to examine whether the requirements are satisfied, *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). However, although the court is "at liberty" to consider evidence that relates to the merits if such evidence also goes to the requirements of Rule 23, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), the court may not consider whether the party seeking class certification has stated a cause of action or is likely to prevail on the merits, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). If a district court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

**A.     Rule 23(a)**

    **1.     Numerosity**

Numerosity, the first requirement under Rule 23(a), does not require that joinder of all members be impossible, but only that joinder be impracticable. *Arnold v. United Artists*

10

*Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994); Fed. R. Civ. P. 23(a)(1). Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity. *Arnold*, 158 F.R.D. at 448. Rather, whether joinder is impracticable depends on the facts and circumstances of each case. *Id.*

In this case, it is not disputed that there are approximately six million dual eligibles. Moreover, Plaintiffs have filed declarations from around the country stating that problems with obtaining Part D benefits are widespread, and that it is not just a handful of dual eligibles who are experiencing problems in getting Part D benefits for the reasons alleged in Plaintiffs' complaint. *E.g.,* Harper Decl. ¶ 4 (155 cases in Los Angeles County); McCormick Decl. ¶ 12 (86 cases in Massachusetts); Wadas Decl. ¶ 5 (267 cases in Wisconsin);. Although not all of these individuals may have satisfied the presentment requirement, significant numbers of individuals appear to have done so. *E.g.*, Harper Decl. ¶ 5 (explaining that in "most cases," the agency spends one to three hours assisting each dual eligible by "contacting the pharmacy, the Part D drug plan, the Centers for Medicare & Medicaid Services (CMS), and/or the Social Security Administration"); McCormick Decl. ¶¶ 9-10 (detailing several individual contacts with CMS on behalf of dual eligibles and explaining that the agency has spent "hundreds of hours" calling pharmacies, Part D plans, regional CMS offices, the Social Security Administration, and the Massachusetts Medicaid office on behalf of dual eligibles); Wadas Decl. ¶¶ 5, 9 (stating that, since January 1, 2006, 19 cases were referred "to state and federal authorities" through the agency's "formal complaints process" and 37 contacts were made with the regional CMS office).

In addition, other indicia also favor a finding of impracticability of joinder in this case. For example, the class includes members who are geographically dispersed; class members are, by definition, on low incomes and therefore have limited financial resources that would make it difficult or impossible for them to bring individual lawsuits; and the class is fluid in nature and involves future members who are presently unidentifiable because new individuals regularly become dually eligible for benefits. Based on all of the above, the Court concludes that Plaintiffs have met their burden of establishing numerosity.

11

### 2. Commonality

Next, Rule 23(a)(2) requires that common questions of law or fact exist among class members. To satisfy this requirement, which is to be construed "permissively," it is sufficient for class members to have shared legal issues but divergent facts or, similarly, to share a common core of facts but base their claims for relief on different legal theories. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The Rule 23(a)(2) commonality requirement is less rigorous than that under Rule 23(b)(3), which requires that common issues "predominate," and the Ninth Circuit considers the requirements for finding commonality under Rule 23(a)(2) to be "minimal." *Id.* at 1020.

Plaintiffs in this case easily satisfy such requirements because they all base their claims on the same legal theory – namely, that Defendant has failed to comply with his obligations regarding the implementation of Part D benefits for low-income individuals under the Medicare statutes. Plaintiffs identify the following common legal issues: "what the MMA requires the Secretary to do regarding auto-enrollment to protect the dual eligibles, what the MMA requires the Secretary to do regarding subsidizing the dual eligibles' costs under Part D, and what systems must be in place to assure the Secretary's compliance with these requirements under the law." Mot. at 6. Similarly, Plaintiffs identify the following common factual issues: "whether the Secretary has a system in place to provide medications to the dual eligibles under Part D, whether the Secretary has a system in place to notify the Part D plans of the dual eligibles' subsidy status, and whether the dual eligibles have access to the drugs they need." While this last purported common issue of fact appears to be an individualized issue, the other asserted common issues are, indeed, common to the class and are more than sufficient to satisfy the minimal commonality requirements of Rule 23(a)(2).

Defendant does not argue that any of the above issues is not common to the class. Instead, he contends that commonality cannot be satisfied in cases, like this one, where the plaintiffs fail to identify a particular system-wide practice or policy that allegedly caused harm to class members. However, Plaintiffs need not pinpoint a specific policy to satisfy the requirements for class certification. *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 448 (N.D.

12

Cal. 2001) (rejecting defendant's argument "that the proposed class cannot be certified because Plaintiffs have not pointed to a 'specific' or 'easily identifiable' policy"). To the contrary, it is sufficient for Plaintiffs to allege that Defendant has failed to take action – i.e., failed to implement a practice or policy – that satisfies his obligations to implement the Part D program from dual eligibles.

In a similar case challenging systemic deficiencies in the Philadelphia child welfare system, the Third Circuit reversed the district court's finding of lack of commonality. The court noted that "all of the plaintiffs seek to force the DHS [Department of Human Services] to comply with its statutory mandates, and all of their injuries alleged here would be cured if DHS remedied the systemic deficiencies." *Baby Neal v. Casey*, 43 F.3d 48, 61 (3d Cir. 1994). The court continued by explaining that "[t]he differing degree and nature of the plaintiffs' injuries also do not preclude a finding of commonality. . . . [T]he putative class members in this case share the common legal claim that DHS's systemic deficiencies result in widespread violations of their statutory and constitutional rights, irrespective of their varying individual needs and complaints." *Id.* Moreover, as in this case, *Baby Neal* involved a claim only for declaratory and injunctive relief and did not seek damages. Thus, "the factual differences are largely irrelevant" because they will "not preclude the district court from determining whether the class claims are meritorious, or from ordering the appropriate relief in the event that they are." *Id.* The lack of an identified system-wide policy or practice is therefore no bar to a finding of commonality.

### 3. Typicality

Rule 23(a)(3) requires typicality, which, like commonality, the Ninth Circuit interprets permissively. *Hanlon*, 150 F.3d at 1020. Typicality requires that named plaintiffs be members of the class they represent and "possess the same interest and suffer the same injury" as class members. *Falcon*, 457 U.S. at 156 (citation omitted). The named plaintiffs' claims need not be identical to the claims of the class; rather, claims are typical if they are "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.

13

1 Consequently, typicality is satisfied where the named plaintiffs' claims "arise from the same
2 remedial and legal theories" as the class claims. *Arnold*, 158 F.R.D. at 449.
3    Defendant's only argument against finding typicality is the same one raised in
4 opposition to commonality: that Plaintiffs do not challenge an identified policy or practice.
5 The "common theme" that Defendant has failed to comply with his legal mandates on a
6 systemwide basis, however, is sufficient to support a finding of typicality. *Baby Neal*, 43
7 F.3d at 63. As the Third Circuit explained, "[a]t any one time, the plaintiffs do not suffer
8 from precisely the same deficiency, but they are all alleged victims of the systemic failures.
9 Moreover, they each potentially face all of the system's [alleged] deficiencies." *Id.*
10    Like the claims in *Baby Neal*, the named plaintiffs' claims in this case are typical of
11 those of the class they seek to represent. Because this case seeks only injunctive relief and
12 not individualized damages or benefits awards, the Court's focus will be on Defendant's
13 actions (or inactions) and not individual plaintiffs. For example, in *Baby Neal*, the court
14 explained that the district court "would not need to assure that every child received an
15 'appropriate' case plan, for instance. Instead, the court would assure that the DHS had an
16 adequate mechanism for generating and monitoring appropriate case plans." *Id.* Similarly,
17 in this case, the Court will not be ensuring that every individual class member receives the
18 full Part D benefits to which he or she is entitled; instead, the Court's focus will be on
19 whether Defendant has complied with his obligations to implement Part D. To the extent that
20 Defendant's arguments are based on his contention that the failure of particular dual eligibles
21 to receive full benefits is the result of individual administrative glitches rather than a system-
22 wide problem, such arguments go to the merits of this case and are not appropriately
23 considered at the class certification stage.

### 4. Adequacy

25    The fourth and final Rule 23(a) requirement – adequacy – requires: (1) that the class
26 representatives and class counsel not have conflicts of interest with the class and (2) that the
27 class be represented by qualified counsel who will vigorously prosecute the case on behalf of
28 the class. *Hanlon*, 150 F.3d at 1020. In appointing class counsel, the Court must consider:

- the work counsel has done in identifying or investigating potential claims in the action,

- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

- counsel's knowledge of the applicable law, and

- the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i).

Defendant's challenges to adequacy rest on his commonality and typicality objections and his motion to dismiss for failure to satisfy the presentment requirement – arguments that this Court has already rejected. In addition, because Plaintiffs raise only class claims and do not seek individualized relief, there can be no conflict of interest between class claims and individual claims. Defendant has raised no other objections to the adequacy of the class representatives, and the Court finds the named representatives to be adequate.

As to adequacy of class counsel, Plaintiffs' counsel have been counsel of record in numerous Medicare class actions, and they work for organizations dedicated to representing Medicare and Medicaid beneficiaries. Thus, they have sufficient class action experience and appear knowledgeable about relevant law. Additionally, counsel appear to have adequately investigated the claims in this action and do not have any apparent conflicts with the class. Finally, there is no reason to believe that counsel will be unable to devote the resources necessary to prosecute this action to resolution. Notwithstanding the Court's earlier concerns regarding Plaintiffs' counsel's strategic choices, the Court finds counsel's experience and resources to be sufficient to satisfy the adequacy requirements of Rule 23(a) and Rule 23(g).

Accordingly, the Court finds that the proposed class, as redefined by the Court, satisfies all of the requirements of Rule 23(a).

**B.     Rule 23(b)(2)**

Before it can be certified, the class must also satisfy one of the requirements of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(2), which applies where a defendant "has acted or refused to act on grounds generally applicable to the class, thereby making

15

1  appropriate final injunctive relief or corresponding declaratory relief with respect to the class
2  as a whole." Fed. R. Civ. P. 23(b)(2).  For a class to be certified under this section, "[i]t is
3  sufficient if class members complain of a pattern or practice that is generally applicable to the
4  class as a whole," even if not all class members have been injured by the challenged practice.
5  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Defendant contends that the requirements of Rule 23(b)(2) have not been satisfied because Plaintiffs have not challenged a specific policy or practice and because the Court will need to examine individualized cases to determine appropriate relief. The Court has already rejected these arguments in the context of commonality and typicality, and it now does so again in the context of Rule 23(b)(2). As the Third Circuit explained in *Baby Neal*, which, like this case, did not target specific policies but instead raised systemic concerns:

> Because the children in the system are comparably subject to the injuries caused by this systemic failure, even if the extent of their individual injuries may be affected by their own individual circumstances, the challenge to the system constitutes a legal claim applicable to the class as a whole. . . . The fact that the plaintiffs in this case seek only injunctive and declaratory relief, not individual damages, further enhances the appropriateness of the class treatment. Clearly, this action aims to define the relationship of the defendants to the universe of children with whose care the defendants are charged. Plaintiffs simply ask the district court to declare the DHS's current provision of child welfare services to the plaintiffs to be violative of the cited statutory and constitutional provisions and to order DHS to implement a system that would enable it to comply with its legal mandates in the provision of these services. Furthermore, all of the class members will benefit from relief which forces the defendant to provide, in the manner required by law, the services to which class members either are currently or at some future point will become entitled.

*Baby Neal*, 43 F.3d at 64.

The same holds true in this case. Contrary to Defendant's assertions, Plaintiffs have not asked the Court "to review each individual case and resolve any type of administrative problem that allegedly has led to a Dual Eligible not receiving benefits that he or she is entitled to receive." Opp'n at 2. As repeatedly noted above, Plaintiffs do not seek such individualized relief. Instead, Plaintiffs ask the Court to order Defendant to comply with his statutory obligations regarding implementation of the Part D program for dual eligibles. If

16

1 Plaintiffs were to prevail on the merits, the Court would not need to engage in individualized
2 inquiries regarding which class members have been denied benefits.  Indeed, rather than
3 seeking awards for damages or retroactive benefits, Plaintiffs' complaint seeks injunctive
4 relief requiring Defendant, among other things, "to promptly auto-enroll all dual eligible
5 beneficiaries who have not chosen a plan into a Part D plan and inform plans of the
6 assignment," "to disenroll beneficiaries on a prompt and efficient basis from plans and enroll
7 them into the appropriate plan of their choice when they have enrolled themselves or
8 switched plans, and notify the appropriate plan of their enrollment according to the law," "to
9 inform the appropriate prescription drug plans in a prompt and timely manner that plaintiffs
10 and the class members are subsidy eligible individuals," and "to refrain from reducing any
11 monthly Social Security benefit check to pay for Part D premiums for which the plaintiffs
12 and class members are not responsible as subsidy eligible individuals, or allow Part D plans
13 to bill plaintiffs for any of these amounts."  SAC Prayer for Relief ¶ 4.  Defendant argues that
14 these are individualized requests for relief couched in class-wide terms, but this argument is
15 simply incorrect; Plaintiffs do not seek, for instance, a court order that any particular
16 claimant be promptly enrolled or that any particular plan be informed of a particular
17 claimant's eligibility for benefits.  Plaintiffs have complained of conduct by Defendant that is
18 applicable to the class generally and that may be remedied by class-wide relief.  This is
19 sufficient to satisfy Plaintiffs' burden under Rule 23(b)(2).

20 Of course, at this stage of the proceedings, it remains to be determined whether the
21 relief Plaintiffs seek is warranted.  The relief may not be appropriate, for example, if
22 Defendant already has such policies in place or if such policies are not required under the
23 Medicare statute.  Such questions, however, are more properly resolved at the merits stage of
24 this litigation, rather than at class certification.

25

26 **IV.  Nationwide Scope of Class**
27 Finally, in a footnote, Defendant argues that any certified class should be limited in
28 geographical scope and should not be nationwide.  Defendant argues that the government is

17

1  not bound by collateral estoppel, and the Supreme Court has noted that it may be helpful for
2  different district and appellate courts to rule on particular issues before the Supreme Court
3  takes review. *United States v. Mendoza*, 464 U.S. 154, 160 (1984). However, Defendant
4  also acknowledges that, notwithstanding this principle, nationwide classes are permissible in
5  certain circumstances, including cases challenging procedures for providing government
6  benefits. *E.g., Yamasaki*, 442 U.S. at 702-03 (affirming certification of a nationwide class in
7  a social security benefits case and holding that certification of such classes "is committed in
8  the first instance to the discretion of the district court").

9  As the Supreme Court explained in *Yamasaki*, "a federal court when asked to certify a
10 nationwide class should take care to ensure that nationwide relief is indeed appropriate in the
11 case before it, and that certification of such a class would not improperly interfere with the
12 litigation of similar issues in other judicial districts" *Id.* at 702. That standard is satisfied
13 here, since Plaintiffs challenge conduct by the Secretary that is applicable nationwide and
14 have named individual plaintiffs in various states, and Defendant has failed to point the Court
15 to any litigation in other judicial districts with which this case might interfere. Thus, the
16 Court rejects Defendant's challenge to the nationwide scope of the class.

## CONCLUSION

With good cause appearing for all of the reasons discussed above, IT IS HEREBY ORDERED that Plaintiffs' motion for class certification is GRANTED IN PART. The Court certifies the following class for all claims raised in Plaintiffs' second amended complaint:

> All full benefit dually eligible Medicare beneficiaries who have not received the full benefits of Medicare Part D prescription drug coverage or the Low Income Subsidy program because of one or more of the following: (1) the Secretary did not follow all auto-enrollment requirements after the beneficiary failed to enroll in a plan of his or her choice; (2) at the time benefits were sought, the beneficiary's Part D plan had not been informed by the Secretary of the beneficiary's enrollment in the plan or his or her entitlement to the Low Income Subsidy; or (3) the beneficiary was listed by the Secretary as a member of more than one Part D plan or as a member of the incorrect Part D plan after the beneficiary elected to change plans.

In addition, the National Senior Citizens Law Center and the Center for Medicare Advocacy, Inc. are hereby appointed as class counsel.

**IT IS SO ORDERED.**

Dated:  01/12/07

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT